**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| THE SHAMROCK GROUP, SHAMROCK FISHERIES, LLC, KINEO FISHERIES, LLC, MARINER FISHERIES, LLC, SEAFARER FISHERIES, LLC, CYNBEL FISHERIES, LLC, TORBAY FISHERIES, LLC, GALWAY FISHERIES, LLC, AND BILL & EILEEN, LLC,  )<br><br>Plaintiffs,  )<br><br>v.  )<br><br>BASE, INC.,  )<br><br>Defendant.  ) | Case No. 19-cv-12407-DJC |

**MEMORANDUM AND ORDER**

CASPER, J.                                                                                      August 10, 2020

## I.    Introduction

Plaintiffs The Shamrock Group, Shamrock Fisheries, LLC, Kineo Fisheries, LLC, Mariner

Fisheries, LLC, Seafarer Fisheries, LLC, Cynbel Fisheries, LLC, Torbay Fisheries, LLC, Galway

Fisheries, LLC, and Bill & Eileen, LLC (collectively, "Plaintiffs") originally filed this lawsuit in

Suffolk Superior Court against Defendant Base, Inc. ("Base") seeking declaratory and injunctive

relief that they are not required to submit to arbitration.  D. 1-3.  Base removed the case to this

Court under 28 U.S.C. § 1331.  D. 1.  Plaintiffs now seek to have this Court dismiss the complaint

for lack of subject matter jurisdiction and remand to the Suffolk Superior Court.  D. 9.  Base has

moved to compel arbitration and stay the proceedings pending arbitration.  D. 17; D. 18.  For the

reasons stated below, the Court ALLOWS Plaintiffs' motion to remand, D. 9, and DENIES Base's

motion to compel arbitration and stay proceedings pending arbitration as moot.  D. 17, D. 18.

## II.    Standard of Review

A defendant can remove a civil action presenting a claim or right "arising under the

Constitution, laws, or treaties of the United States" to federal district court.   28 U.S.C. §§ 1331,

1441(a).  Upon the filing of a motion to remand, the Court must assess whether it "would have had

original jurisdiction of the case had it been filed in [this] court."  BIW Deceived v. Local S6, Indus.

Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4, 132 F.3d 824, 832 (1st

Cir. 1997) (quoting Grubbs v. General Elec. Credit Corp., 405 U.S. 699, 702 (1972)) (internal

quotation marks omitted).  Generally, a plaintiff is the master of his claims and has "the prerogative

to rely on state law alone although both federal and state law may provide a cause of

action."  Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999) (citing Caterpillar

Inc. v. Williams, 482 U.S. 386, 392 (1987)). "When a plaintiff files an action in state court and the

defendant responds by invoking federal jurisdiction through removal, the defendant has the burden

of establishing that removal to the district court is proper."  Barbosa v. Wells Fargo Bank, N.A.,

No. 12-cv-12236-DJC, 2013 WL 4056180, at *3 (D. Mass. Aug. 13, 2013) (citing Danca, 185 F.3d

at 4).  To meet its burden, a defendant "must . . . make a 'colorable' showing that a basis for federal

jurisdiction exists." Danca, 185 F.3d at 4 (quoting BIW Deceived, 132 F.3d at 832). "Doubts about

the propriety of removing an action should be resolved in favor of remand."  Giannetti v. Mahoney,

218 F. Supp. 2d 8, 10 (D. Mass. 2002).

## III.   Factual Background and Procedural History

In 2016, the Office of General Counsel for the National Oceanic and Atmospheric

Administration ("NOAA") initiated a civil enforcement action against non-party Carlos Rafael.

D. 1-3 ¶ 49.  Carlos Rafael and his affiliated entities (collectively, "the Rafaels" were engaged in

commercial fishing.  See D. 1-3 ¶¶ 48, 50.  On August 19, 2019, the Rafaels reached a settlement

agreement with NOAA regarding the civil enforcement action that required them to divest

themselves of all their commercial fishing vessels and permits by December 31, 2020 in a sale (or

sales) required to be approved by NOAA.  D. 1-3 ¶¶ 59-60.

The Rafaels were members of sector seven, a group of federal limited access groundfish

permit holders located in New Bedford, Massachusetts.  D. 1 ¶ 7-8, 13.  Permit holders enrolled in

sector seven are parties to a Membership Agreement and an Operations Plan, which contain a right

of first refusal ("ROFR") for sales in favor of other sector seven members.  D. 1 ¶ 16.  Initially,

the Rafaels provided notice of the sale of "the Rafael Assets" to sector seven.  D. 1 ¶ 18.  In

September 2019, however, the Rafaels withdrew their ROFR notice and informed the sector seven

board of directors that they intended to sell their vessels and permits to companies owned and

controlled by Charles and Michael Quinn (the "Quinns").[1]  D. 1 at 2; D. 1-3 ¶ 74.  The Rafaels

argued that they could do so under an exemption provision of the Membership Agreement that

allowed for the transfer of fishing vessels and permits to members of the local fishing community.

D. 1-3 ¶ 75.

On September 11, 2019, Base, a member of sector seven, sued the Rafaels in state court

seeking arbitration, injunctive and declaratory relief to sell the vessels and permits in compliance

with the ROFR pursuant to the Membership Agreement and Operations Plan, as well as damages

under Mass. Gen. L. c. 93A § 11.  D. 1-3 at 231–33.  Base also filed an *ex parte* motion for a

temporary restraining order ("TRO") to prevent the Rafaels from selling the vessels and permits

---

[1]  The Plaintiffs, except for one, are limited liability companies organized under the laws of the
Commonwealth of Massachusetts owned by the Quinns.  D. 1-3 ¶¶ 3-11.

to the Quinns.  D. 1-3 ¶ 92.  The state court granted Base's TRO, enjoining the purchase and sale of the vessels and permits to the Quinns.  Id.  Two days later, however, after a preliminary injunction hearing, the court held that Base did not have a strong likelihood of success on the merits of its claims.  D. 1-3 ¶ 94; D. 1-3 at 216-17.  Accordingly, the state court vacated the TRO. D. 1-3 ¶ 95; D. 1-3 at 217.

On September 18, 2019, Base initiated an arbitration action against the Rafaels, which is presently before the American Arbitration Association, contending that it is the sector seven board of directors, not the Rafaels, that must determine who falls into the local fishing community exception of the ROFR.  D. 1 ¶ 22-23.  On September 24, 2019, the Quinns and Rafaels closed on the purchase and sale of the vessels and permits.  D. 1-3 ¶ 96.  The arbitration panel, comprised of three arbitrators, found that Base had a likelihood of success on the merits for its claim that it was wrongfully deprived of the ROFR to purchase the Rafael Assets on the same terms as Plaintiffs. D. 1 ¶ 23.  Base amended its arbitration demand, adding Plaintiffs as parties, alleging that they wrongfully acquired the Rafael Assets during the pending arbitration.  D. 1 ¶ 24.  Plaintiffs then filed the complaint in this matter in the Suffolk Superior Court (Business Litigation Session) seeking declaratory and injunctive relief declaring that they were not obligated to arbitrate their claims and staying the arbitration proceedings.  D. 1 ¶ 25; see D. 1-3 at 30.  Base removed the case to this Court.  D. 1.  Plaintiffs now move to remand the case to the Suffolk Superior Court, D. 9, and Base moves to compel arbitration and stay the proceedings pending such arbitration.  D. 17, 18.  The Court heard the parties on the pending motions and took the matters under advisement. D. 43.

### IV.     Discussion

#### A.     <u>**Motion for Remand**</u>

Base contends that this Court has subject matter jurisdiction under 28 U.S.C. § 1331 for

federal question jurisdiction because the complaint "is seeking to prevent BASE's prosecution of

its rights under federal law, to wit:  its right to compel Plaintiffs to arbitrate pursuant to federal law

requiring Plaintiffs to be bound by the Membership Agreement and Operations Plan."    D. 1 ¶¶

27, 31.

##### *1.     Considering Motion for Remand*

"Ordinarily, determining whether a particular case arises under federal law turns on the

'well-pleaded  complaint'  rule."   <u>Aetna  Health  Inc.  v.  Davila</u>,  542  U.S.  200,  207

(2004) (quoting <u>Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.</u>, 463 U.S.

1, 9–10 (1983)); <u>see</u> <u>Rossello-Gonzalez v. Calderon-Serra</u>, 398 F.3d 1, 10 (1st Cir. 2004) (quoting

<u>Hernandez-Agosto  v.  Romero-Barcelo</u>,  748  F.2d  1,  2  (1st  Cir.  1984)).   Here,  the  state  court

complaint does not allege any federal claim.  <u>See</u> D. 1-3 at 28–30.  Instead, it seeks declaratory

and injunctive relief that Plaintiffs are not parties to the sector seven contract and thus are not

required to submit to arbitration.  <u>See id.</u>  The complaint, therefore, on its face does not present a

federal question.  <u>See</u> <u>Kiely v. Canty</u>, 102 F. Supp. 3d 359, 364-65 (D. Mass. 2015) (concluding

that complaint on its face did not present a federal question where the complaint sought declaratory

judgment that the plaintiff was not bound by an arbitration agreement).

Generally,  under  the  well-pled  complaint  rule,  the  Court  may  not  consider  potential

defenses that a  defendant may raise in evaluating whether it has subject matter jurisdiction.  <u>See</u>

<u>Weiner v. Wampanoag Aquinnah Shellfish Hatchery Corp.</u>, 223 F. Supp. 2d 346, 351 (D. Mass.

2002).  In a declaratory judgment action, however, "the familiar well-pleaded complaint rule asks

whether there would necessarily be federal jurisdiction if the declaratory judgment defendant

brought a coercive action [corresponding to the declaration sought] to enforce its rights." Kiely,

102 F. Supp. 3d at 365 (quoting Great Clips, Inc. v. Hair Cuttery of Greater Boston, L.L.C., 591

F.3d 32, 35 (1st Cir. 2010) (internal quotations omitted)); see Colonial Penn Group, Inc. v.

Colonial Deposit Co., 834 F.2d 229, 232-33 (1st Cir. 1987) (holding that when "the complaint in

an action for declaratory judgment seeks in essence to assert a defense to an impending or

threatened state court action, it is the character of the threatened action . . . which will determine

whether there is federal-question jurisdiction in the District Court") (internal citations omitted).

Moreover, where, as here, "a party seeks to compel or enjoin an arbitration proceeding, the proper

inquiry is to look beyond the pleading to the underlying controversy to determine whether it is

predicated on an action that arises under federal law." Kiely, 102 F. Supp. 3d at 365 (quoting

Vaden v. Discover Bank, 556 U.S. 49, 62 (2009) and citing PCS 2000 LP v. Romulus

Telecomms., 148 F.3d 32, 35 (1st Cir. 1998) (internal quotations omitted)).

The proper inquiry here, therefore, is what coercive "action [Base] would have brought had

[it] initiated an action to compel Plaintiff[s] to arbitrate." Kiely, 102 F. Supp. 3d at 335-36.  Base

would have alleged that the Membership Agreement and the Operations Plan compel Plaintiffs to

arbitrate and that Plaintiffs are bound by the agreement and plan because they purchased the

Raphael Assets. See D. 1 ¶ 9-12.

2.      *Base's Claims Do Not Involve Substantial Questions of Federal Law*

Base argues that its claims are based in federal law because federal agencies, National

Marine Fisheries Service ("NMFS") and NOAA intended sector participants to abide by and

enforce the Membership Agreement and Operations Plan.  D. 19 at 1.  While the NMFS requires

vessel owners participating in a sector to adhere to "all applicable requirements and conditions of

the operations plan," 50 C.F.R. § 648.87(b)(1)(iv)(A), a court need not interpret federal law to

resolve whether Plaintiffs are bound to adhere to the Membership Agreement and Operations Plan.

Instead, whether Plaintiffs are required to arbitrate and whether they have violated the Membership

Agreement and Operations Plan hinges on interpreting the terms of that agreement and plan.  Such

a breach of contract claim, without more, does not present a federal question.  See Municipality of

Mayaguez v. Corporación Para el Desarrollo del Oeste, Inc., 726 F.3d 8, 15 (1st Cir. 2013) (holding

that federal issues were not sufficiently substantial to warrant federal question jurisdiction over

state law contract claim where "actions of a federal agency hover in the background of [the]

dispute" and were "removed from [plaintiff's] breach of contract claim").

   Even assuming that a court would have to interpret a federal regulation to determine if

Plaintiffs are bound by the arbitration agreement, it does not "necessarily follow that federal

jurisdiction exists." Templeton Bd. of Sewer Com'rs. v. Am. Tissue Mills of Mass., Inc., 352 F.3d

33, 40 (1st Cir. 2003) (holding that substantial federal question was not present even if claim may

require some application and interpretation of federal law because it was "at its core, a breach of

contract claim").   Here, at its core, Base alleges that Plaintiffs breached the terms of the

Membership Agreement and Operations Plan. See D. 19 at 14.  "[T]his cannot rise to a substantial

question of federal law.  The federal issue, assuming one exists, is tangential to the parties'

contractual rights." Id. at 41 (emphasis in original).  Here, the federal fishing rights that allegedly

provide federal question jurisdiction, do not define the rights of the parties under the Membership

Agreement or the Operations Plan or provide them with a remedy.  See id. (citing Franchise Tax

Bd. Of State of Cal, 463 U.S. at 20–21).  "[Base] cannot create jurisdiction by reference to [federal

laws] when the dispute arises from [Plaintiffs'] contractual obligations."  Id.

7

The fact that the contracts were created to comply with federal law and enacted by a federal agency is too tenuous a connection to rise to the level of  substantial question of federal law.  See Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 687 (2006) (holding that there was no substantial federal issue in a case interpreting contract terms negotiated by a federal agency). Accordingly, Base's claims do not involve substantial federal questions because at their core, they are breach of contract claims arising out of the Membership Agreement and Operations Plan.

### 3.      *The Preemption Doctrine Is Not Applicable*

Lastly, Base alleges that Congress exercised complete sovereignty over any and all fish caught within the federal waters in the Exclusive Economic Zone when it passed the Magnuson Stevens Fishery Conservation and Management Act ("MSA") and thus this Court has exclusive jurisdiction over any claims arising out of the MSA.  D. 19 at 16.  Under the MSA, the New England Fishery Management Council regulates fishery resources within the federal waters off New England's coast.  Lovgren v. Locke, 701 F.3d 5, 5 (1st Cir. 2012).  Base contends that these claims arise out of the MSA because Plaintiffs would not have access to the permits in dispute but for the creation of the MSA.  D. 19 at 17.

Pursuant to Article VI of the United States Constitution, Congress can preempt conflicting state law so that it is "without effect."  Maryland v. Louisiana, 451 U.S. 725, 746 (1981) (citing McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 427 (1819)).  "The purpose of Congress is the ultimate touchstone of pre-emption analysis."  Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516 (1992) (internal citations and quotation marks omitted).  Congress's purpose can be "explicitly stated in the statute's language or implicitly contained in its structure and purpose."  Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977) (citing City of Burbank v. Lockheed Air Terminal Inc., 411 U.S. 624, 633 (1973); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).

"Ordinarily, preemption of federal law is simply a defense to a state law claim and not a basis for removal to federal court because of the well-pleaded complaint rule."  Nahigian v. Leonard, 233 F. Supp. 2d 151, 165 (D. Mass 2002) (citing Metro. Life Ins. Co., 481 U.S. 58, 63 (1987)).  Only when "Congress has demonstrated such a strong intent to preempt [] any claims brought in that area (even if purportedly raising only state law claims)," is there a basis for removal to federal court.  Nahigian, 233 F. Supp. 2d at 165.  "If Congress intends a preemption instruction completely to displace ordinarily applicable state law, and to confer federal jurisdiction thereby, it may be expected to make that atypical intention clear."  Empire, 547 U.S. at 698.  Base has provided no authority, and the Court has not found any, to support the assertion that Congress intended its jurisdiction under the MSA to be so far reaching as to render inoperative any and all state laws or state law claims that bear tangentially upon federal fishery laws.

In sum, the Court concludes that Base's claims that Plaintiffs are compelled to arbitrate pursuant to the Operations Plan and Membership Agreement do not involve substantial questions of federal law and are not preempted by federal law.  Instead, at the center of these claims is whether Plaintiffs can be compelled to arbitrate as a non-signatory to  an agreement to arbitrate. D. 6 at 13-14; see Kiely, 102 F. Supp. 3d at 366-67.  Accordingly, the Court ALLOWS Plaintiffs' motion to remand.

### B.      Attorney's Fees and Costs

Plaintiffs seek attorney's fees and costs upon remand pursuant to 28 U.S.C. § 1447(c).  D. 9 at 11.  "Absent unusual circumstances," however, "attorney's fees should not be awarded under [Section] 1447(c) when the removing party has an objectively reasonable basis for removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 136 (2005).  Although "the First Circuit has not defined what constitutes an 'objectively reasonable basis' for removal, other sessions of this Court

have declined to award expenses and costs unless the facts are 'so one-sided as to have made remand a foregone conclusion.'" Rizzi v. 178 Lowell Street Operating Co., LLC, 180 F. Supp. 3d 66, 69 (D. Mass. 2016) (quoting Houston v. FLS Language Centres, 18 F. Supp. 3d 17, 25 (D. Mass. 2014). The Court concludes that Base had an objectively reasonable basis for removal. Base's main ground for removal—that the Membership Agreement and Operations Plan were created in compliance with 50 C.F.R. § 648.87(b)(1)(iv)(B) has not squarely been addressed by the First Circuit, and thus it cannot be said that remand was a foregone conclusion. See Irabor v. Lufthansa Airlines, 427 F. Supp. 3d 222, 234 (D. Mass. 2019) (ruling that arguments for removal were objectionably reasonable where First Circuit had not addressed the particular federal preemption question); D. 19 at 17. While BASE's argument did not succeed here, it provided an objectively reasonable basis for removal. Accordingly, the Court DENIES Plaintiffs' request for attorney's fees.

**C.      Motion to Compel Arbitration and Motion to Stay Arbitration**

In light of the Court's ruling on the motion for remand, as discussed above, the Court DENIES Base's motion to compel arbitration and motion to stay proceedings pending arbitration, D. 17, D. 18, as moot.

**V.      Conclusion**

For the reasons discussed above, the Court ALLOWS Plaintiffs' motion to remand, D. 9, and DENIES Base's motion to compel arbitration and stay proceedings pending arbitration, D. 17, D. 18, as moot.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

10